UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CYNTHIA G. PENNINGTON,

                            Plaintiff,

                            Case # 13-CV-6304-FPG

v.

                            DECISION AND ORDER

CITY OF ROCHESTER, LIEUTENANT ERIC PAUL,
In His Official and Individual Capacity,
COUNTY OF MONROE, and DEPUTY G. WILCZAK,
In His Official and Individual Capacity,

                            Defendants.

**INTRODUCTION**

On June 13, 2013, Plaintiff Cynthia G. Pennington filed a Complaint alleging various claims against Defendants City of Rochester and Lieutenant Eric Paul. ECF No. 1. Specifically, Pennington alleged six causes of action: (1) intentional infliction of emotional harm against Paul; (2) negligent infliction of emotional harm against Paul; (3) a cause of action under 42 U.S.C. § 1983 ("Section 1983") against Paul alleging that he violated Pennington's Fourth and Fourteenth Amendment rights; (4) the City failed to train Paul in violation of Section 1983; (5) the City ratified Paul's misconduct in violation of Section 1983; and (6) the City had a policy, practice, or custom of encouraging Paul's misconduct in violation of Section 1983. *See* ECF No. 1.

On September 6, 2013, Pennington filed another Complaint against Defendants County of Monroe and Deputy G. Wilczak under case number 13-CV-6480 containing facts and six causes of action identical to those alleged in her first Complaint. *See* 13-CV-6480, ECF No. 1. The causes of action follow the same pattern as those in the Complaint against the City and Paul: the same three causes of action in the same order against Wilczak, and the same three causes of action in the same order against the County. *Id.*

The City answered Pennington's first Complaint on November 26, 2013, over four months after it was due. *See* ECF Nos. 3, 5. On December 3, 2013, the case was referred to United States Magistrate Judge Jonathan W. Feldman for pretrial proceedings. *See* ECF No. 6. Three days later, on December 6, 2013, Plaintiff moved to consolidate both of her cases—13-CV-6304 and 13-CV-6480—into one case. *See* ECF No. 7. The Court granted the Motion on January 13, 2014, and both actions were thereafter maintained under the current case number: 13-CV-6304. *See* ECF No. 11.

On February 26, 2014, Pennington requested the Clerk of Court to enter default against the City for failing to timely answer the Complaint. *See* ECF No. 20. The Clerk obliged the next day. *See* ECF No. 22.

On August 5, 2014, the County and Wilczak moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See* ECF No. 42. Nearly a year later, on May 11, 2015, Pennington moved to stay discovery proceedings pending a decision on the Motion for Judgment on the Pleadings. *See* ECF No. 51. Judge Feldman subsequently granted the motion. *See* ECF No. 55.

On July 23, 2015, Pennington moved for default judgment against the City for failing to timely answer her Complaint. *See* ECF No. 57. In response, the City moved to vacate the Clerk's entry of default the next day. *See* ECF No. 58.

Currently before the Court is the Motion for Judgment on the Pleadings filed by the County and Wilczak, Pennington's Motion for Default Judgment, and the City's Motion to Vacate the Clerk's Entry of Default. For the reasons stated, the Motion for Judgment on the Pleadings is GRANTED IN PART, the Motion for Default Judgment is DENIED, and the Motion to Vacate the Clerk's Entry of Default is GRANTED.

## BACKGROUND[1]

On September 13, 2012, at approximately 11:18 p.m., Paul and Wilczak entered Pennington's house without a warrant while Pennington was asleep in her bedroom. 13-CV-6480, ECF No. 1 ¶¶ 24-25. Paul then woke Pennington up. *Id.* ¶ 26. After Pennington asked why Paul and Wilczak were in her home, Paul claimed that he and Wilczak were performing a welfare check on Pennington. *Id.* ¶ 29. He further stated that he and Wilczak knocked on Pennington's door and called for her through the windows, but received no response. *Id.* Pennington then asked Paul and Wilczak to leave her home. *Id.* ¶ 30. They did so. *Id.* ¶ 31.

After the encounter, Paul and Wilczak created a false police report to conceal their alleged misconduct. *Id.* ¶ 38.[2]

## DISCUSSION

### I.   Motion for Judgment on the Pleadings

Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) command the same standard as a motion to dismiss under Rule 12(b)(6). *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).

A complaint will survive a motion to dismiss under Rule 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw reasonable inferences that the defendant is liable for the alleged conduct. *Iqbal*, 556 U.S. at 678.

---

[1] The Court takes the following allegations from Plaintiff's Complaint, 13-CV-6480, ECF No. 1, and accepts them as true. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). The Court also notes that both of Plaintiff's Complaints—one filed under 13-CV-6304, the other under 13-CV-6480—contain nearly-identical fact sections; the 13-CV-6304 Complaint does not name Wilczak, while the 13-CV-6480 Complaint does. Also, because the 13-CV-6480 Complaint was originally filed against Wilczak and the County, the Court uses that Complaint as the operative Complaint even though it was not filed under 13-CV-6304. Finally, the Court will summarize the facts concerning only Wilczak and the County because only those two Defendants move for judgment on the pleadings.

[2] The Complaint contains no further factual allegations concerning either Wilczak or the County.

In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted); *see also Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) ("As we have repeatedly held, complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.").

With these principles in mind, the Court turns first to the causes of action against Wilczak and then to those against the County.

### A. Deputy G. Wilczak

#### i. Intentional and Negligent Infliction of Emotional Harm

"For both negligent and intentional infliction of emotional distress, a plaintiff must show 'that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Ivery v. Baldauf*, 284 F. Supp. 2d 426, 441 (W.D.N.Y. 2018) (quoting *Berrios v. Our Lady of Mercy Med. Ctr.*, 20 A.D.3d 361, 362 (1st Dep't 2005)). "In New York, claims for intentional infliction of emotional distress are 'extremely disfavored,' and '[o]nly the most egregious conduct has been found sufficiently extreme and outrageous to establish' such a claim." *Id.* (quoting *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 488 (S.D.N.Y. 2013)); *see also Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 586 (E.D.N.Y 2011) ("[T]his highly disfavored cause of action is almost never successful.").

Here, Pennington has not plausibly alleged causes of action for either intentional or negligent infliction of emotional distress ("IIED" and "NIED"). Assuming the truth of Pennington's allegations and viewing them in a light most favorable to her, Wilczak wrongfully entered her home under the auspices of performing a welfare check on her after knocking on her door and calling for her through her windows. Those were his only acts—he made no statements, did not threaten, intimidate, or harass her, and made no physical contact with her. Based on these allegations, the Court cannot find that Pennington has plausibly alleged causes of action for either IIED or NIED. *Compare Travis v. Village of Dobbs Ferry*, 355 F. Supp. 2d 740, 756 (S.D.N.Y. 2005) (refusing to dismiss a claim for IIED on summary judgment where police officers wrongfully pulled plaintiff over, searched her car, performed a pat frisk, searched her purse, and performed a strip search) *with Abdella v. O'Toole*, 343 F. Supp. 2d 129, 140 (D. Conn. 2004) (dismissing IIED on summary judgment where police officers wrongfully searched plaintiff's home) (applying Connecticut law). Consequently, Pennington's causes of action for IIED and NIED against Wilczak are DISMISSED. The Court next considers Pennington's cause of action under Section 1983.

      ii.        **Section 1983**

Section 1983 imposes civil liability upon any person who, under color of state law, subjects an individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 137 (2d Cir. 1999). Section 1983 is not itself a source of any substantive rights, but, rather, is a vehicle by which citizens may seek to vindicate rights conferred elsewhere. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "[T]o state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987). Allegations that amount

5

to "nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Id.*

Here, Pennington alleges that Wilczak acted under color of state law and deprived her of her Fourteenth and Fourth Amendment rights.[3] *See* 13-CV-6480, ECF No. 1 ¶¶ 47-53. The Court addresses each allegation in kind.

### a. Fourteenth Amendment

Where a defendant's alleged conduct is prohibited, and thus "covered," by the Fourth Amendment, a cause of action under the Fourteenth Amendment is the improper vehicle to address the conduct, and, thus, the cause of action should be dismissed. *See, e.g.*, *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) ("Substantive due process analysis is . . . inappropriate . . . if respondents' claim is 'covered by' the Fourth Amendment.") Accordingly, Pennington's Section 1983 cause of action alleging a violation of her Fourteenth Amendment rights against Wilczak is DISMISSED.

### b. Fourth Amendment

Wilczak makes two arguments in support of his Motion against Pennington's Fourth Amendment cause of action. He first argues that he lawfully entered Pennington's home. Second, he argues that he is entitled to qualified immunity. The Court addresses each argument below.

#### 1. Lawful Entry

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[,]" U.S. Const. amend. IV, and particularly protects against wrongful entry into the home, *see Montanez v. Sharoh*, 444 F. App'x 484, 486 (2d Cir. 2011) (summary order) (quoting *Payton v. New York*, 445 U.S. 573, 585

---

[3] It is unclear whether Plaintiff is alleging a due process violation when she says her Fourteenth Amendment rights were violated. Out of an abundance of caution, the Court addresses Plaintiff's due process cause of action to the extent it is alleged.

6

(1980)). Consequently, it is well established that warrantless searches and seizures in the home are presumptively unreasonable. *See, e.g.*, *United States v. Simmons*, 661 F.3d 151, 156 (2d Cir. 2011) (citing *Kentucky v. King*, 563 U.S. 452, 459 (2011)).

Even so, police officers may lawfully enter a home without a warrant under certain, "exigent" circumstances. *See, e.g.*, *King*, 563 U.S. at 460 ("This Court has identified several exigencies that may justify a warrantless search of a home."). One such exigency is the "emergency aid" exception, under which a police officer "may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance." *Montanez*, 444 F. App'x at 486 (quoting *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998)).

When courts evaluate an officer's entry into a home under the emergency aid exception,[4] they "must apply an objective standard to determine the reasonableness of the officer's belief, taking into account the circumstances then confronting the officer, including the need for a prompt assessment of sometimes ambiguous information concerning potentially serious consequences." *Id.* (quoting *Tierney*, 133 F.3d at 196-97) (quotation marks and citations omitted). "The officer's subjective motivation is irrelevant." *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006).

The Court notes that the "police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches." *King*, 563 U.S. at 460 (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 749-750 (1984)). The police "do not need ironclad proof of a serious, life-threatening injury to invoke the emergency aid exception," *Michigan v. Fisher*, 558 U.S. 45,

---

[4] The Second Circuit provides six additional factors to determine whether an officer's warrantless entry into a home is justified. *See Montanez*, 444 F. App'x at 486 (quoting *United States v. Fields*, 113 F.3d 313, 323 (2d Cir. 1997)). Upon review of these factors, however, the Court finds that they are not relevant to this case. For example, they ask the Court to weigh the "gravity or violent nature of the offense with which the suspect is charged[,]" whether the suspect is armed, and "[the] likelihood that the suspect will escape if not swiftly apprehended." Here, according to the allegations in the Complaint, Pennington was not suspected of committing a crime, possessing weapons, or considered likely to flee. Paul and Wilczak were merely performing a welfare check. Consequently, the Court evaluates only the reasonableness of Wilczak's belief that Pennington was in distress and in need of assistance.

49 (2009), but their objectively reasonable belief must be based on more than speculation, *see United States v. Simmons*, 661 F.3d 151, 158-59 (2d Cir. 2011).

Here, Wilczak's warrantless entry into Pennington's home was unlawful. Before entering Pennington's home, the following circumstances confronted Wilczak: he performed a welfare check on Pennington for an unknown reason;[5] he arrived at her home around 11:18 p.m.; and he knocked on Pennington's door and called her name through the windows of her home and received no response.

These circumstances do not justify a warrantless entry into Pennington's home. Other Courts have required more indicia of distress when confirming that a warrantless entry into a home was justifiable under the emergency aid exception. *See, e.g.*, *Fisher*, 558 U.S. at 45-46 (complaint of a disturbance near the home, report that a man was "going crazy," three broken windows, individual inside the home screaming and throwing things); *Brigham City*, 547 U.S. at 400-01 (report of a loud party, shouting inside the house, four adults restraining a juvenile inside the home, juvenile striking an adult in the face); *Tierney*, 133 F.3d at 197 (officer responding to "bad" domestic disturbance, reporting that shouting ended before he arrived, window of home broken); *Mayes v. Village of Hoosick Falls*, 162 F. Supp. 3d 67, 83 (N.D.N.Y. 2016) (911 call from home, no one on the call, line remained open, operator heard two male voices and sounds that indicated they were trying to enter a locked building); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 381-82 (S.D.N.Y. 2013) (Life Aid received an alert from plaintiff's Life Aid device, operators unable to get a response from plaintiff, several reports of an "emotionally disturbed person" had been made regarding plaintiff in the past).

Of the cases the Court reviewed, the companion cases *City & County of San Francisco v. Sheehan*, from the Supreme Court, and *Sheehan v. City & County of San Francisco*, from the Court

---

[5] The Court does not know why Paul and Wilczak performed a welfare check because neither Pennington nor Defendants submitted a police report explaining the encounter between Pennington, Paul, and Wilczak.

of Appeals for the Ninth Circuit, provide the closest factual comparison to the case at hand. Teresa Sheehan, the Respondent and Appellant in the Supreme Court and Ninth Circuit cases, respectively, suffered from a mental illness and lived in a group home in San Francisco. *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1215 (9th Cir. 2014). Her social worker became concerned about her mental health and requested that the police help escort Sheehan to a mental health facility. *Id.* The social worker noted that Sheehan was not taking her medication and was a danger to others because Sheehan threatened him when he tried to perform a welfare check on her. *Id.* Two San Francisco police officers responded to Sheehan's residence and entered her room without a warrant. *Id.* The Ninth Circuit held that the officers' entry was constitutional, noting that

> [o]fficers conducting a welfare search, where the objective is rescue, are expected to err on the side of caution, and under the circumstances of this case the officers reasonably could have believed that Sheehan's situation presented a genuine emergency and that entering as they did was a reasonable means of providing her with assistance.

*Id.* The Supreme Court agreed. *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775-76 (2015). It noted that the officers knew Sheehan had a weapon, had threatened to use it to kill three people, and that delay may endanger the lives of others. *Id.* Finally, the Supreme Court explained that "[t]he Constitution is not blind to the fact that police officers are often forced to make split-second judgments." *Id.* (quoting *Plumhoff v. Rickard*, 124 S. Ct. 2012, 2020 (2014)) (quotation marks omitted).

The circumstances confronting Wilczak are not comparable. Based on the allegations in the Complaint, Wilczak had insufficient information to reasonably believe that Pennington or another individual in Pennington's home were in distress. The Court is sensitive to the fact that police officers must err on the side of caution and make difficult judgments quickly. The facts currently before the Court, however, are insufficient to support the conclusion that Wilczak

9

reasonably believed Pennington was in distress and needed emergency assistance. Because Wilczak's warrantless entry was not justified under the emergency aid exception, the Court now evaluates whether he is entitled to qualified immunity.

## 2. Qualified Immunity

Qualified immunity shields federal and state officials from unnecessary trial proceedings unless "(1) [] the official violated a statutory or constitutional right, and (2) [] the right was clearly established at the time of the challenged conduct." *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012). District courts may choose to evaluate either prong first. *Id.*

Because the Court concluded that Wilczak violated Pennington's Fourth Amendment rights, the Court weighs the second prong: whether Pennington's Fourth Amendment right was clearly established when Wilczak entered her home.[6]

Under the second prong, a "government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Coollick*, 699 F.3d at 220 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (alteration omitted). "There is no need for a case on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *al-Kidd*, 563 U.S. at 741) (quotation marks omitted). As the Second Circuit has emphasized,

> [the] inquiry is not whether the officer *should have* acted as he did. Nor is it whether a singular, hypothetical entity exemplifying the "reasonable officer"—a creature akin to the "reasonable man" of the law of torts—*would have* acted in the same way. It is instead whether *any* reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that the challenged action was lawful.

---

[6] The Court notes that the "Supreme Court has expressly encouraged the use of summary judgment when qualified immunity is raised as a defense." *Cartier v. Lussier*, 955 F.2d 841, 844 (2d Cir. 1992). Raising the qualified immunity defense at summary judgment allows the Court to evaluate an officer's actions after discovery and when it is more likely that the facts regarding the officer's actions are undisputed.

*Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (citation omitted and emphasis in original). Similar to the Court's analysis of the emergency aid exception, the Court uses an objective standard to evaluate whether a reasonable officer could have determined the action was lawful—his subjective motivation is irrelevant. *See Coollick*, 699 F.3d at 220.

Here, no reasonable officer could have determined that Wilczak's warrantless entry into Pennington's home was reasonable. As the Court has explained, it is well established that the Fourth Amendment jealousy guards against warrantless entry into the home. *See Montanez*, 444 F. App'x at 486. Few exigencies exist that allow police officers warrantless entry into the home, and the only one that is applicable—the emergency aid doctrine—is clearly defined. *See id.* No reasonable officer, confronted with the same circumstances as Wilczak, would conclude that Pennington was in distress and needed emergency aid based on the abundance of precedent outlining the exception from the Supreme Court and the Second Circuit. Consequently, Wilczak is not entitled to qualified immunity and Pennington's Section 1983 cause of action against him remains. The Court next reviews Pennington's causes of action against the County.

### B. The County

Pennington alleges three causes of action against the County,[7] all under Section 1983: the County "failed to properly train and supervise" Wilczak, constituting "deliberate indifference;" the County "ratified" Wilczak's misconduct; and the County had a "policy, practice, or custom [that] encouraged" Wilczak's misconduct. *See* 13-CV-6480, ECF No. 1 ¶¶ 58, 61, 65. The County argues that the Complaint fails to state a claim for which relief can be granted on all three causes of action.

---

[7] The County argues that it is not liable under the theory of *respondeat superior* for Plaintiff's three causes of action against Wilczak: IIED, NIED, and Section 1983. *See* ECF No. 42-2 at 4-5. Regardless of whether or not that is a correct statement of the law, Pennington does not allege that the County is liable for the causes of action against Wilczak. *See* ECF No. 1. In other words, her causes of action against Wilczak are directed at Wilczak only, and her causes of action against the County are directed at the County only. As a result, the Court does not address whether the causes of action against Wilczak apply to the County.

In the landmark case *Monell v. Department of Social Services*, the Supreme Court decided that municipalities may be held liable for their employees' constitutional violations under Section 1983 "where the municipality allegedly implemented an unconstitutional custom or policy." *Montero v. City of Yonkers*, 890 F.3d 386, 403 (2d Cir. 2018) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 694-95 (1978)). Importantly, *Monell* does not conclude that plaintiffs may hold municipalities liable under separate causes of action—there must be an underlying constitutional violation that occurred because of the municipality's unconstitutional custom or policy. *See Gem Fin. Serv., Inc. v. City of New York*, 298 F. Supp. 3d 464, 490 (E.D.N.Y. 2018) (citing *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)). In other words, plaintiffs can hold a municipal actor and the municipality liable under the same cause of action: the actor for the constitutional violation, and the municipality for the unconstitutional custom or policy that led to the actor's violation. *See id.*

Consequently, Pennington has improperly labeled her "causes of action" against the County. They are not separate causes of action against the County; they are theories under which the County may be held liable based on Wilczak's constitutional violation.

To plausibly allege a *Monell* theory under which a municipality may be held liable, a plaintiff must do more than "simpl[y] recit[e] that there was a failure to train municipal employees," that there was a custom, policy, or practice that led to the constitutional violation, or that the municipality ratified an employee's conduct. *See Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993); s*ee also Montero*, 890 F.3d at 403-04; *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012). Notably, isolated, unconstitutional acts "by non-policymaking municipal employees are generally not sufficient to demonstrate a

municipal custom, policy, or usage that would justify municipal liability." *Jones*, 691 F.3d at 81 (citing *Villante v. Dep't of Corr.*, 786 F.2d 516, 519 (2d Cir. 1986)).

Here, Pennington has failed to plausibly allege that the County is liable for Wilczak's conduct. First, she has only alleged a single, unconstitutional act by Wilczak—his warrantless entry into her home. Second, she alleges no facts to underpin the conclusory allegations of *Monell* liability. In fact, the "Facts" section of Pennington's Complaint, 13-CV-6480, ECF No. 1 ¶¶ 12-38, does not mention the County, any policymaking County officials, or any acts or omissions that would constitute a failure to train or supervise, ratification, or a custom, practice, or policy. Accordingly, the "causes of action" against the County are DISMISSED. The Court turns next to Pennington's Motion for Default Judgment and the City's corresponding Motion to Vacate the Clerk's Entry of Default.

## II. Motions for Default Judgment and to Vacate the Clerk's Entry of Default

A party must follow a specific process to obtain a default judgment.[8] Fed. R. Civ. P. 55; *Gasser v. Infanti Int'l, Inc.*, No. 03 CV 6413 (ILG), 2008 WL 2876531, at *6 n.6 (E.D.N.Y. July 23, 2008); *Brown v. Marshall*, No. 08-CV-12F, 2009 WL 1064189, at *1 (W.D.N.Y. Apr. 20, 2009). First, when a party has "failed to plead or otherwise defend" an action against it, the opposing party must secure an entry of default from the clerk via an affidavit or other showing. Fed. R. Civ. P. 55(a). Next, if the party seeking a default judgment is a plaintiff whose claim is a "sum certain" and the defendant is neither a minor nor incompetent, the plaintiff may request the

---

[8] There appears to be confusion among counsel for Pennington and the City regarding the applicable rules at issue. In her Motion for Default Judgment, Pennington argues that the City had a "reasonable time" to move to vacate the Clerk's entry of default under Federal Rule of Civil Procedure 60(c). ECF No. 57-2 ¶ 20. Plaintiff is correct that Rule 60(c) contains that requirement; however, Rule 60(c) establishes time limits for moving to vacate a *judgment* under Rule 60(b). The City is not moving to vacate a judgment. It is moving to vacate the Clerk's entry of default, which is governed by Rule 55(c). Rule 55(c) contains no time limit for such a motion. Likewise, the City argues that the Clerk's entry of default should be vacated under Rule 60(a). ECF No. 58-1 ¶ 9. This is also incorrect, for two reasons. First, Rule 60(a) allows parties to move to correct a clerical mistake in a judgment, order, or other part of the record. It does not relate in any way to defaults or default judgments. Second, Rule 60(b), which the Court infers the City intended to reference instead of Rule 60(a), allows parties to move to vacate a judgment. The Court has not entered a judgment in this case. The City is moving to vacate the Clerk's entry of default. Rule 55(c) explains how to do so.

13

clerk to enter a default judgment, and the clerk must oblige. Fed. R. Civ. P. 55(b)(1). "In all other cases," the party seeking a default judgment must apply to the court. Fed. R. Civ. P. 55(b)(2). Default judgments are generally disfavored and are reserved for rare occasions. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *see also New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (noting that the Second Circuit "has expressed a strong preference for resolving disputes on the merits" (quotation marks omitted)).

The entry of default by the Clerk is a mandatory pre-condition to seeking a default judgment from the Court. *See, e.g., Perkins v. Napoli*, No. 08-CV-6248 CJS, 2010 WL 455475 at *1 (W.D.N.Y. Feb. 4, 2010). After the Clerk enters default against a defendant under Rule 55(a), however, the Court may set it aside for good cause. Fed. R. Civ. P. 55(c).

Good cause is determined via three criteria: "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 454 (2d Cir. 2013). The Court weighs each of these three criteria below.

### A. Willfulness

A default is "willful" when it is deliberate and not brought on by outside factors. *Bricklayers & Allied Craftworkers Local 2, Albany Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 188 (2d Cir. 2015); *see also Guggenheim Capital, LLC*, 722 F.3d at 455. The Second Circuit has construed "willfulness" to be more than negligence, such as egregious or deliberate conduct. *Green*, 420 F.3d at 108.

Here, the Court finds that the City's default was more than negligent, but less than egregious or deliberate. In its Motion to Vacate, the City contends that it timely answered Pennington's Complaint because Pennington's previous attorney granted the City an extension of time to respond to the Complaint. *See* ECF No. 58-1 ¶¶ 4-7; *see also* ECF No. 58-3. This is

14

incorrect. The Court set the deadline to respond to the Complaint as July 22, 2013. ECF No. 3. Any extension of time to respond is granted not by Plaintiff's counsel, but by the Court. *See* Fed. R. Civ. P. 6(b).

Nevertheless, it does not appear to the Court that the City delayed their Answer for delay's sake. Indeed, the fact that the City filed an Answer at all shows that their default was not willful.

### B. Meritorious Defense

A defense is meritorious if it is "more than conclusory." *Green*, 420 F.3d at 110. Whether a defense is meritorious "is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Johnson v. NYU*, 324 F.R.D. 65, 71 (S.D.N.Y. 2018) (quoting *Enron Oil Corp.*, 10 F.3d at 98). The threshold for this factor is low. *See id.*

Here, the City has shown that it has a meritorious defense in this case. The City's answer contains seven affirmative defenses to counter Plaintiff's allegations. *See* ECF No. 5 ¶¶ 6-12. The City responds to each and every allegation in Plaintiff's Complaint. *See id.* The Court does not decide whether the City's arguments will result in a finding of liability, but the City has responded to each cause of action and allegation. Consequently, its defense is "complete" and "meritorious."

### C. Prejudice

Finally, prejudice exists where delay will "thwart [the non-defaulting party's] recovery or remedy[,] . . . result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Green*, 420 F.3d at 110 (quoting *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983)).

Here, Pennington has endured no prejudice as a result of the City's delay in filing its Answer. The case did not progress in the four months between service of the Complaint and the City's Answer. In that time, Pennington took no action to further prosecute the case. Moreover,

Pennington moved to stay the proceedings in this case nearly two years after she filed her Complaint, and approximately a year-and-a-half after the City answered. Pennington has alleged no loss of evidence and no opportunity for fraud or collusion. Finally, there are no increased difficulties of discovery because discovery is currently stayed and the City participated in discovery before the stay—it submitted initial disclosures along with the other parties. *See* ECF No. 39.

Consequently, the City has shown good cause to vacate the Clerk's entry of default. As a result, Pennington no longer has the requisite pre-condition to seek a default judgment—the Clerk's entry of default—and her Motion for Default Judgment is DENIED.

## CONCLUSION

For the foregoing reasons, the Motion for Judgment on the Pleadings, ECF No. 42, filed by the County and Wilczak is GRANTED IN PART, Pennington's Motion for Default Judgment, ECF No. 57, is DENIED, and the City's Motion to Vacate the Clerk's Entry of Default, ECF No. 58, is GRANTED. Per the terms of Judge Feldman's Order,[9] the parties are directed to contact him regarding further proceedings and the Clerk of Court is directed to remove the stay associated with this case.

---

[9] "The parties are directed to contact the undersigned upon resolution of the motions to vacate . . . and for judgment on the pleadings[.]" ECF No. 55.

Additionally, the Court notes that the remaining causes of action are as follows: three causes of action against Paul, three causes of action against the City, and one cause of action under Section 1983 against Wilczak. Because the County cannot be held liable under *Monell*, the Clerk of Court is directed to dismiss the County as a party to this action.

IT IS SO ORDERED.

Dated: June 18, 2018
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court